# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF VIRGINIA
### CHARLOTTESVILLE DIVISION

| | |
|---|---|
| JOHN WILLIAM GENTRY, *ET AL.*, | |
| *Plaintiffs,* | CASE NO. 3:13–cv–00030 |
| v. | OPINION |
| HYUNDAI MOTOR AMERICA, INC., | JUDGE NORMAN K. MOON |
| *Defendant.* | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | |
|---|---|
| ALIM ABDURAHMAN, *ET AL.*, | |
| *Plaintiffs,* | CASE NO. 3:14–cv–00002 |
| v. | OPINION |
| HYUNDAI MOTOR AMERICA, INC., *ET AL.*, | JUDGE NORMAN K. MOON |
| *Defendants.* | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | |
|---|---|
| JIHAD ABDUL-MUMIT, *ET AL.*, | |
| *Plaintiffs,* | CASE NO. 3:14–cv–00005 |
| v. | OPINION |
| HYUNDAI MOTOR AMERICA, INC., *ET AL.*, | JUDGE NORMAN K. MOON |
| *Defendants.* | |

These three cases are before the Court on motions to dismiss. Each involves allegations that Hyundai Motor America, Inc. ("HMA") misstated or misrepresented the gas mileage

obtained by Hyundai Elantras. *Gentry* is a class action against a single defendant, HMA. *Abdurahman* is a mass action of over 700 plaintiffs against 29 defendants: HMA and various Virginia dealerships. *Abdul-Mumit*—also a mass action with substantively identical allegations to *Abdurahman*—has over 500 named plaintiffs suing 27 defendants. The cases previously were stayed, transferred to MDL 2424, and then partially remanded by the MDL back to this Court in September 2015. Each case contains a claim under the Virginia Motor Vehicle Warranty Enforcement Act ("Lemon Law"), Va. Code §§ 59.1-207.9 *et seq.*; the Virginia Consumer Protection Act of 1977 ("VCPA"), Va. Code §§ 59.1-196 *et seq.*; and for false or misleading advertising, Va. Code §§ 18.2-216 & 59.1-68.3.

An important date in these cases is November 2, 2012, when HMA announced its "recalculation" of fuel economy estimates for certain vehicles ("Announcement"). At the MDL, a class settlement was reached for pre-November 2nd purchasers and is now on appeal before the Ninth Circuit. Thus, the MDL remanded these cases for proceedings on two sets of claims: (1) any **pre-**November 2nd purchasers who opted out of the settlement, and; (2) **post-**November 2nd purchasers of 2011-13 Hyundai Elantras sold in Virginia. (*Gentry*, dkt. 91).

The parties have presented numerous jurisdictional and merits arguments. After briefing and oral argument, the Court concludes that aspects of the Lemon Law claim in *Gentry* based on the on-board mileage calculator may proceed. But the aspect of the Lemon Law claim based on fuel economy, as well as Mr. Gentry's VCPA and false advertising claims, will be dismissed because those counts do not state a claim. As for *Abdul-Mumit* and *Abdurahman*, the Court finds that it has jurisdiction based on the Class Action Fairness Act ("CAFA"). In addition to sharing some shortcomings with the *Gentry* complaint, the complaints in *Abdul-Mumit* and *Abdurahman* are devoid of facts pertaining to any of the hundreds of named plaintiffs or to any Defendant

– 2 –

other than HMA.  Therefore, those complaints will be dismissed.

## PROCEDURAL BACKGROUND

### I.    *Gentry* Filed and Stayed.

*Gentry* was filed in this Court in August 2013.  The complaint was amended that October, but Defendant HMA moved both to dismiss the complaint and to stay the case.  The case was stayed in November 2013 pending a decision from the MDL.

### II.    *Abdurahman* Filed and Removed, so *Abdul-Mumit* Is Filed (and Removed).

After Gentry was stayed, the Plaintiffs' attorney, Mr. Feinman, filed a mass action, *Abdurahman*, in state court in December 2013.  Defendants removed the case to this Court on January 2014, citing the Class Action Fairness Act ("CAFA") as the basis for removal.

The next day, Mr. Feinman filed *Abdul-Mumit* in the Roanoke Circuit Court, a complaint which was substantively identical to *Abdurahman*, except that the caption of named plaintiffs and defendants differed somewhat.  Predictably, Defendants removed *Abdul-Mumit* in February 2014, although this time—in addition to CAFA jurisdiction—they also relied on traditional diversity jurisdiction (arguing that that defendant dealerships in Virginia were fraudulently joined or were nominal defendants) and federal question jurisdiction (arguing that the attempt to evade the Court's stay in *Gentry* implicated the Court's authority to control its own proceedings).

### III.    MDL Transfers, then Remands, the Cases

With motions to dismiss pending in all three cases, the MDL on June 9, 2014 ordered the transfer of all three cases to the Central District of California.

After extensive proceedings, the MDL returned the cases on September 15, 2015 to this Court, identifying the two classes noted above: pre-November 2nd opt-outs and post-November 2nd purchasers.  From late 2015 to mid-2016, the parties—at the Court's repeated urging—

– 3 –

attempted with only modest success to resolve various case management issues: *e.g.*, deadlines; identification of proper plaintiffs and possible duplication of cases; and whether discovery, repleading, or both should occur.

In June and July 2016, the Court ordered Plaintiffs to amend their complaints to reflect developments in the case, or else have their prior complaints deemed operative. (*See Gentry*, dkts. 86, 89). They chose the latter, and Defendants filed renewed motions to dismiss in all three cases.

## ALLEGATIONS IN *GENTRY*

*Gentry* was filed as a class action with five named plaintiffs. Defendant HMA asserts— and Plaintiff does not contest—that the four other named class representatives were not remanded by the MDL because those plaintiffs fell within the settlement and did not opt out. Thus, Mr. Gentry is the only remaining named plaintiff in *Gentry*.

The Complaint brings claims for violations of Virginia's "Lemon Law," the VCPA, and deceptive advertising law. (Dkt. 27 [hereinafter "Complaint"] ¶ 4). The case involves allegedly deceptive practices surrounding HMA's 2011–2013 Elantra vehicle.

In November 2010, HMA's CEO introduced the "All New 40 MPG Hyundai Elantra." (Complaint ¶ 5). Ad campaigns represented that the Elantra would obtain 40 miles per gallon ("MPG") on the highway. (*Id*.). Allegedly, 16,000 Virginians bought the 2011–2013 edition. (*Id*.). Mr. Gentry was one of them. He commutes several miles to work, and in early 2013 began researching a new vehicle. (*Id*. ¶ 7). He recalled ads for the 2011–2012 Elantra touting its 40 MPG highway and later saw others about the 2013 Elantra claiming 38 MPG. (*Id*.). He thus purchased a 2013 Elantra on February 18, 2013 from a dealer in Staunton, Virginia. (*Id*. ¶ 8). He asserts that his "warranty book" stated his car would receive "up to" 40 MPG. (*Id*. ¶ 7).

– 4 –

Post-purchase, Mr. Gentry kept track of his car's MPG. Rather than obtaining 38 MPG, his Elantra received only 30 to 33 MPG. (Complaint ¶ 9). Plaintiff returned to the local HMA dealership, where employees relayed that his car should get 38 MPG on the highway. (*Id.* ¶¶ 9–10). Indeed, the dealership's owner drove the vehicle himself and calculated that Gentry's car was receiving 32 MPG, and that the on-board mileage calculator was overstating the actual gas mileage. (*Id.* ¶ 10). Further testing by the dealership employees and HMA representatives occurred.

On June 18, 2013, HMA employees performed tests in Staunton, Virginia. (Complaint ¶ 11). Their tests yielded 62 MPG and 42 MPG calculations, while the on-board mileage calculator yielded 37–40 MPG and 38–44 MPG, respectively. (*Id.*). In subsequent conversations with Mr. Gentry, the dealership's owner expressed doubt about the accuracy of these calculations, which contradicted his experiences, as well as Mr. Gentry's, when driving the car. (*Id.* ¶ 12). The dealership owner claimed the HMA employees insisted that: the Elantra obtained the proper gas mileage; Mr. Gentry's calculations were caused by his driving style; and the car received the proper gas mileage. (*Id.*).

Facing a nonresponsive HMA, Gentry sought legal representation. During his search, he discovered "for the first time" details of a separate class action where HMA admitted in November 2012 that it has submitted false and incorrect mileage calculations to the EPA for its 2011–2013 Elantras. (Complaint ¶ 13). Plaintiff alleges additional facts regarding two of his claims.

<u>Lemon Law</u>. Plaintiff alleges that HMA published on its website in April 2012 statements that 39% of Elantras obtain 40 MPG. (Complaint ¶ 21). HMA cannot fix its 2011–2013 Elantras to make them produce 40 MPG. (*Id.* ¶ 24). Further, HMA represented that

– 5 –

Elantra's on-board mileage calculators would give "accurate" MPG assessments but in fact do not. (*Id*. ¶ 25). Mr. Gentry alleges "on information and belief" that HMA knew its MPG tests for the Elantra model, as well as its on-board mileage calculator, were inaccurate. (*Id*.).

VCPA. Plaintiff asserts several statements or actions by HMA constituted violations of the VCPA: (A) HMA's statement that Elantras would receive 40 MPG; (B) HMA's refusal to sell an Elantra to Mr. Gentry that conformed to the 40 MPG representation; (C) HMA's representation that the on-board calculator was accurate; (D) statements from a HMA website that 2013 Elantras could obtain 38 MPG had deceptively obscure and difficult-to-read disclaimers; (E) HMA employees' statements about the gas mileage Mr. Gentry's Elantra actually received when they tested it. (*See* Complaint ¶ 31).

## *GENTRY*—ANALYSIS OF MOTION TO DISMISS

### I.    Additional Facts Presented by HMA.

HMA submitted several exhibits to its motion to dismiss. HMA uses the first class of exhibits to advance its legal arguments about preemption. The second batch of documents is used in support of HMA's argument that the EPA has primary jurisdiction over this case. Even if the Court were to consider these documents, the arguments they support do not succeed or fail by reference to the exhibits.

For Exhibits A through E, HMA urges judicial notice of statements made by the government on its websites. *See Johnson v. Clarke*, No. 7:12CV00410, 2012 WL 4503195, at *2 n.1 (W.D. Va. Sept. 28, 2012) (compiling cases). These exhibits contain statements made on the EPA's website about fuel economy, HMA's Elantra, and the relevant regulatory regime. HMA observes that federal law mandates fuel economy labels and authorizes the EPA to issue effecting regulations. *See* 48 U.S.C. § 32908(b); 40 C.F.R. §§ 600.302-12(a)-(f), (h). One

– 6 –

regulation mandates that these labels state: "actual results will vary for many reasons." 40 C.F.R. § 600.302-12(b)(4). According to the EPA, the purpose of the fuel estimates is to "help consumers compare the fuel economy of different vehicles when shopping for new cars." (Dkt. 91-3 at ECF 2).

On November 2, 2012—before Gentry purchased his car—EPA and HMA announced that, as a result of a federal investigation, HMA would lower fuel estimates on most 2012 and 2013 models by an average of 1-2 MPG; the change for Elantras was 2 MPG. (Dkt. 91-5 at ECF 2; dkt. 91-6 at ECF 2). The Announcement advised that HMA would be submitting a plan to re-label all cars on dealership lots with corrected mileage estimates. (Ex. D).

From this, HMA states that Gentry saw a corrected label *before* he purchased his vehicle. And from that purported fact, HMA asserts that the Court may take judicial notice of a reproduced sticker in its brief because it is integral to the complaint. Based on the existence of the sticker—so HMA's argument goes—Gentry's claims fail because he had notice of the accurate MPG estimate for his Elantra.

However, this line of argument assumes that HMA actually re-labeled the car Mr. Gentry bought before he bought it. Indeed, HMA admits the sticker is a "replica" of what Mr. Gentry "would have seen at the time of purchase." (Dkt. 91-1 at 7). At the motion to dismiss stage, the Court cannot use the additional facts HMA has submitted to make further factual inferences that (1) HMA properly relabeled the car Gentry bought, and (2) Gentry saw the corrected mileage sticker before purchasing his vehicle. *See Zak v. Chelsea Therapeutics Int'l, Ltd.*, 780 F.3d 597, 607 (4th Cir. 2015).

HMA also relies upon a consent decree between it, other parties, and the EPA entered on January 9, 2015 in a Washington, D.C. court. (Ex. I, J). Specifically, HMA must submit a

"Corrective Measures Completion Report" by April 2018 and annual reports for monitoring by the EPA. (Ex. J., ¶ 19; *Id.* App'x A, ¶ 10). The import of these documents is discussed, *infra*, where the Court finds that the primary jurisdiction doctrine does not apply, and thus the EPA's consent decree is no impediment to deciding these cases.

## II.    Standing

To bring a federal case, a "plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547, 194 L. Ed. 2d 635 (2016). HMA argues that Gentry lacks standing because he did not suffer injury in fact and, even if he did, such injury was not fairly traceable to HMA. The Court concludes that Mr. Gentry has standing.

Under the injury-in-fact inquiry, an alleged injury must affect the plaintiff in a personal and individual way. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 n.1 (1992). HMA argues that Mr. Gentry cannot base his claims on pre-Announcement fuel estimates because those estimates were not in effect when he purchased his car in February 2013. It says that representations about models he did not purchase are irrelevant, and Mr. Gentry never claims to have seen (before his purchase) the advertisements he cites about the 2013 Elantra. (Dkt. 91-1 at 11). But the Announcement does not affect Gentry's claim, which is that he bought a 2013 Elantra falsely represented to achieve 38 MPG highway mileage. (Complaint ¶ 7). The fact that HMA or the EPA made a generic announcement about an incorrect 40 MPG estimate for some vehicles does not negate Plaintiff's assertion that his vehicle still did not achieve the corrected mileage. HMA's arguments simply go to the merits of whether Mr. Gentry states a plausible claim for relief. *See infra* Part III.

– 8 –

As for the "causal connection" prong, HMA claims that the November 2, 2012 Announcement and the window (or "Monroney") sticker sever any connection between the injury he suffered and the conduct complained of. But HMA's claim about the sticker fails, as it implies the Court may assume (against Gentry) the corrected sticker was placed on Gentry's vehicle and seen by him. At the motion-to-dismiss stage, the Court must make factual inferences from the complaint (or judicially-noticed materials) in favor of Gentry, not against him. *See Zak*, 780 F.3d at 607 ("when a court considers relevant facts from the public record at the pleading stage, the court must construe such facts in the light most favorable to the plaintiffs"). Without this inferential crutch, HMA's argument fails and Mr. Gentry has standing.

## III. Preemption and Other Difficulties

HMA next claims that Gentry's state law claims are preempted by Section 32919(b), which states that when a requirement under § 32908 is in effect, "a State may adopt or enforce a law or regulation on disclosure of fuel economy . . . only if the law or regulation is identical to that requirement." Section 32908(b) and the EPA's effectuating regulations specifically describe the content of the window-sticker fuel economy estimates. Moreover, the Federal Trade Commission has declared that car advertisements must include the relevant EPA mileage estimates. *See* 16 C.F.R. 259.2; *see also Guide Concerning Fuel Economy Advertising of New Automobiles*, 60 Fed. Reg. 56230-01, 1995 WL 652912 (Nov. 8, 1995). Courts have thus found that—to the extent a plaintiff's claims are based on ads or window-stickers using EPA estimates and not defendants' statements about "actual" fuel economy calculations—such claims are preempted. *See In re Ford Fusion & C-Max Fuel Econ. Litig.*, No. 13-MD-2450 KMK, 2015 WL 7018369, at *27 (S.D.N.Y. Nov. 12, 2015) (compiling cases). In other words, to avoid preemption, statements made in advertisements must go beyond the mere (and mandatory)

– 9 –

disclosure of EPA fuel economy estimates.  *See id*. at 26.

HMA argues that "construing" its (proclaimed) use of EPA fuel economy estimates in advertisements as anything more than that—for instance, as a warranty, promise, or statement of actual mileage (as in portions of Count I)—would impose obligations not identical to the federal regulatory regime.  (Dkt. 91-1 at 13).  This argument has some force, although it does not reach Gentry's allegations about the on-board mileage calculator.  (*See* Complaint ¶ 25).  Yet the argument also overlooks the antecedent question:  What was the nature of HMA's statements?

Gentry attempts to frame the relevant statements not as mere disclosures of EPA estimates but as affirmations of fact which would not conflict with federal law (and thus not be the subject of preemption).  *See, e.g., Yung Kim v. Gen. Motors, LLC*, 99 F. Supp. 3d 1096, 1103–04 (C.D. Cal. 2015); *see also* dkt. 92 (Response Br.) at ECF 8.  The parties' positions were brought into sharp relief at oral argument, where HMA claimed that the MPG statements were EPA estimates but Gentry argued they were warranties of fact.  (*See* dkt. 105 [hereinafter "Tr."] at 20, 25, 28, 31).

As an initial observation, it is hard to ascertain what statements Gentry's causes of action involve.  He bought a 2013 Elantra Coupe.  (Complaint ¶ 8).  Prior to purchase, it is alleged he "had previously seen advertisements touting the '40 MPG' Hyundai Elantra vehicles and found numerous advertisements asserting that the 2013 Hyundai Elantra obtained highway mileage of '38 MPG.'"  (*Id*. ¶ 7).  Further details of these ads are not provided, but Gentry attached to his complaint a DVD containing "representative sample[s] of the Hyundai Elantra advertisements, all believed to have been disseminated in Virginia."  (*Id*.).  It was "[b]ased on the[se] Hyundai advertisements and many same or similar affirmations of facts made by salesmen" that Mr. Gentry bought his Elantra.  (*Id*. ¶ 8; *see id*. ¶ 23).  The Court must therefore turn to the ads on the

– 10 –

DVD, which provide the only substantive basis on which to evaluate what representations ostensibly were made to Gentry.

Notably, it is never alleged that Mr. Gentry himself viewed or relied upon these ads. Assuming he did, the DVD contains twelve videos, none of which aid his cause. The third, fourth, and twelfth ones are HMA Super Bowl ads narrated by actor Jeff Bridges; these ads disclose on-screen that the 40 MPG figures are "EPA Estimates." Moreover, they are for 2011 Elantras. Thus, these "representative samples" cannot support Gentry's claims because they are both preempted and irrelevant to the model he purchased.

The second video, "Save the Asterisks," is an HMA-produced online video which touts that all Elantras receive 40 MPG without reference to EPA estimates. But that video involves the 2011 Elantra and thus cannot form the basis of Gentry's claims. *See* Jeremy Korzeniewski, *Video: Hyundai launches Save the Asterisks campaign for 40-mpg Elantra*, AUTOBLOG, http://www.autoblog.com/2010/12/02/video-hyundai-launches-save-the-asterisks-campaign-for-40-mpg-e/ (Dec. 2, 2010). The same is true for the first video, which depicts the unveiling of the 2011 Elantra at a Los Angeles car show.

The remaining videos (5 through 11) fail as well. All are made by local dealerships, which are not defendants in the *Gentry* case, and Plaintiffs' counsel conceded at oral argument that HMA would not be liable for warranties made by dealerships. (Tr. at 30). The fifth video also is unhelpful because it pertains to a 2011 Elantra.

In sum, while the complaint generically asserts that HMA made various, unspecified statements about the 40 MPG Elantra, the only factual allegations before the Court involve statements that (1) properly disclose that they are EPA estimates, and thus are preempted, or (2) are from non-defendant dealerships, (3) are about an Elantra model other than the one Gentry

– 11 –

bought, or (4) some combination thereof. While only this first category of statements are preempted, the others categories provide reasons why Gentry fails to state claims against HMA based on his vehicle's gas mileage.

## IV. Primary Jurisdiction with EPA over Fuel Estimates

Next, HMA urges primary jurisdiction, a doctrine where "a claim pending before a court 'requires the resolution of issues which, under a regulatory scheme, have been placed within the special competence of an administrative body,' [so] judicial proceedings are stayed 'pending referral of such issues to the administrative body for its views.'" *Advamtel, LLC v. AT & T Corp.*, 105 F. Supp. 2d 507, 511 (E.D. Va. 2000) (quoting *United States v. Western Pac. R.R. Co.*, 352 U.S. 59, 63–64 (1956)). The primary jurisdiction doctrine does not apply to this case.

HMA contends that EPA fuel economy estimates for Hyundai vehicles are the subject of ongoing regulatory activity. (Dkt. 91-1 at 14). Specifically, HMA is subject to the consent decree with EPA requiring it to take corrective measures for its EPA fuel economy. (Ex. J (dkt. 91-11) ¶ 19, App'x A). HMA asserts without explanation that "orders by this Court have the potential to interfere and possibly conflict with the agency's oversight."

Primary jurisdiction presents little problem here. Adjudication of the issues in this case—essentially, compensation for unfair and deceptive advertising—would not interfere with the EPA's efforts to ensure that HMA and other defendants take remedial measures to avoid future miscalculations of EPA fuel estimates; nor has the EPA appeared in or suggested this litigation would intrude upon its regulatory prerogatives. *See Envtl. Tech. Council v. Sierra Club*, 98 F.3d 774, 789 & nn. 23–24 (4th Cir. 1996) (despite name, primary jurisdiction doctrine is a discretionary decision by district court; noting that EPA had not sought to intervene or participate as *amicus* when party asserted primary jurisdiction).

– 12 –

**V.      Lemon Law Claim:  Fuel Mileage and On-Board Mileage Calculator**

HMA attacks Mr. Gentry's Lemon Law claim that is rooted in both fuel mileage and the Elantra's on-board mileage calculator.  The Lemon Law applies to defects "which significantly impairs the use, market value, or safety of the motor vehicle to the consumer . . . ."  Va. Code § 59.1-207.13(A).   HMA says that Gentry has not sufficiently alleged that the purportedly erroneous MPG statements and on-board mileage calculator impaired his car's use, value, or safety.

Whether a nonconformity significantly impairs a car's use, market value, or safety is an affirmative defense.  Va. Code § 59.1-207.13(G)(1).  It is not enough on a Rule 12(b)(6) motion that the complaint fails to allege the car's value, use, or safety was affected; rather, the complaint must put forth facts affirmatively showing that the value, use, or safety was not affected.  *See Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007) (*en banc*) (A "motion to dismiss filed under Federal Rule of Procedure 12(b)(6) . . . generally cannot reach the merits of an affirmative defense [except] in the relatively rare circumstances where facts sufficient to rule on an affirmative defense are alleged in the complaint . . . .); *see also id.* at 466.  "An affirmative defense permits 12(b)(6) dismissal if the face of the complaint includes all necessary facts for the defense to prevail."  *Leichling v. Honeywell Int'l, Inc.*, 842 F.3d 848, 850–51 (4th Cir. 2016).  That is not the situation here.

Nevertheless, for the reasons stated in the Court's preemption analysis, *see supra* Part III, the Lemon Law claim will be dismissed to the extent it is based on fuel mileage.  It may proceed regarding the on-board mileage calculator claim.

– 13 –

## VI. VCPA Claim

### A. Reliance and the On-Board Mileage Calculator

Without the fuel mileage aspects of Gentry's claims, *see supra* Part III, the remaining portion of the VCPA claim rests on the alleged inaccuracy of his Elantra's on-board mileage calculator. (Complaint ¶¶ 25, 28). "Virginia courts have consistently held that reliance is required to establish a VCPA claim." *Fravel v. Ford Motor Co.*, 973 F. Supp. 2d 651, 658 (W.D. Va. 2013); *see Hamilton v. Boddie-Noell Enterprises, Inc.*, 88 F. Supp. 3d 588, 591 (W.D. Va. 2015); *Brown v. Transurban USA, Inc.*, 144 F. Supp. 3d 809, 846 (E.D. Va. 2015); *Cooper v. GGGR Investments, LLC*, 334 B.R. 179, 189 (E.D. Va. 2005).

Mr. Gentry failed to plead reliance based on any representation made to him before he purchased his vehicle or in relation to the on-board mileage calculator. (*See* dkt. 91-1 (Def's Br.) at 18–19). The Complaint only makes a generic reference to representations made in an owner's manual that the calculator was accurate. Of course, one has an owner's manual only *after* purchasing a vehicle, and Gentry makes no allegation that he read the manual before buying his Elantra. (*See* Complaint ¶ 25). Further, HMA points out that cases cited by Gentry for the proposition that reliance need not be pled are not VCPA cases. (Dkt. 93 at 11–12).[1] For these reasons, the VCPA claim cannot be premised on the allegedly inaccurate on-board mileage calculator.[2]

---

[1]    Specifically, *Daughtrey v. Ashe*, 243 Va. 73 (Va. 1992), was an express warranty case under the Uniform Commercial Code. The *Daughtrey* Court explicitly did not pass on the contours of reliance, because the statute contained no such requirement. *Id.* at 77–79. Likewise, *Martin v. American Medical Systems, Inc.*, involved a warranty claim which—unlike a VCPA claim—made it "unnecessary that the buyer actually rely upon" a statement. 116 F.3d 102, 105 (4th Cir. 1997).

[2]    Mr. Gentry also relies on the on-board mileage calculator as part of his false advertising claim. This fails for similar reasons. He "has neither alleged that he viewed, nor that [HMA]

– 14 –

**B.     Pleading with Particularity**

Gentry's VCPA claim explicitly accuses HMA of fraudulent conduct.  (*E.g.*, Complaint ¶¶ 31(A), (E)).  Several recent cases hold that VCPA claims, which sound in fraud, must satisfy the heightened pleading standards in Rule 9(b). *See Wynn's Extended Care, Inc. v. Bradley*, 619 F. App'x 216, 220 (4th Cir. 2015); *Vuyyuru v. Wells Fargo Bank, N.A.*, No. 3:15CV598-HEH, 2016 WL 356087, at *4 (E.D. Va. Jan. 28, 2016); *Brown v. Transurban USA, Inc.*, 144 F. Supp. 3d 809, 845 (E.D. Va. 2015); *Maines v. Guillot*, No. 5:16CV00009, 2016 WL 3556258, at *3 (W.D. Va. June 16, 2016).  Although creating a miasma of impropriety, the complaint here alleges very view details about what Mr. Gentry actually encountered and relied upon before buying his vehicle; rather, the complaint contains broad, generic references to unspecified advertisements that HMA allegedly made and Gentry was vaguely aware of at some undisclosed time.  (Complaint ¶¶ 7–8).[3]  Because Gentry must—but has not—plead "the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby," *Wynn's*, 619 F. App'x at 220; *see Brown*, 144 F. Supp. 3d at 845, the VCPA fails in its entirety.

---

ran, any advertisements for the on-board mileage calculator."  (Dkt. 91-1 at 20).  Without any allegations of what advertisements Mr. Gentry saw, relied upon, or "induce[d]" him "to enter into" an agreement for an Elantra, Va. Code. § 18.2-216, he cannot establish any "loss as the result of" alleged false advertising.  Va. Code § 59.1-68.3.

[3]     To the extent Mr. Gentry does provide details about statements or representations made by HMA, they are unconnected to his purchase.  For instance, the Complaint (¶ 21) alleges that, on April 18, 2012, HMA posted a statement on its website that 39% of vehicles sold achieved 40 MPG highway, and suggested that Elantras would obtain that mileage.  But nowhere is it alleged that *Mr. Gentry* viewed this statement, that the statement applied to the Elantra edition he purchased, or that he relied on this statement when purchasing his Elantra.

Similarly, the Complaint and DVD attachment attribute a website screenshot about the 2013 Elantra's fuel economy to HMA.  (Complaint ¶ 31(D)).  But again there is no allegation that Mr. Gentry saw this website page, relied on it, or was mislead by it.

– 15 –

## VII.    Class Allegations

HMA seeks dismissal of the putative class because the Complaint contains no allegations that suggest Mr. Gentry (or for that matter, the other named plaintiffs that are part of the MDL settlement of the pre-November 2nd class) can satisfy the requirements in Fed. R. Civ. P. 23(a) and 23(b).  *See EQT Prod. Co. v. Adair*, 764 F.3d 347, 358 (4th Cir. 2014) (explaining test at certification stage).  The Court will dismiss the class allegations without prejudice as to Mr. Gentry's Lemon Law claim based on the on-board mileage calculator, but with prejudice as to all other aspects.

Mr. Gentry points out that assessment of a class is usually reserved for the certification phase after discovery.  It is true that courts generally prefer to wait until after discovery to make a definitive class certification ruling.  *See, e.g., Govan v. Whiting-Turner Contracting Co.*, 146 F. Supp. 3d 763, 769 (D.S.C. 2015); *Scott v. Clarke*, No. 3:12-CV-00036, 2012 WL 6151967, at *9 (W.D. Va. Dec. 11, 2012).  But courts can still reject consideration of class treatment if the face of the complaint does not contain facts from which a colorable class might exist.  *See, e.g., Waters v. Electrolux Home Prod., Inc.*, No. 5:13CV151, 2016 WL 3926431, at *4 (N.D.W. Va. July 18, 2016); *Cornette v. Jenny Garton Ins. Agency, Inc.*, No. 2:10-CV-60, 2010 WL 2196533, at *2 (N.D.W. Va. May 27, 2010).  So it is here.  The sole allegations about the class are:

> The facts surrounding the purchase of a 2011-2013 Elantra by the five named class representative are typical of what happened to over 16,000 Virginians.  This lawsuit can be amended to include 50, 500, 5,000, or 15,000 victims of [HMA's] misconduct, all of whose stories will be similar to what these five representatives experienced and continue and experience.

(Complaint ¶ 18).  This is simply a superficial allusion to the legal prerequisites of a class in Rule 23(a)—commonality, typicality, adequacy, and numerosity—unadorned by any supporting factual allegations.

– 16 –

Moreover, the diversity of the class representatives undercuts the allegations: Four of the original five representatives are no longer involved in this case because they were part of the pre-November 2, 2012 settlement reached in the MDL. This is in contrast to Mr. Gentry who, by virtue of his purchase date, would fall within a putative post-November 2nd class. This pre-versus post-November 2nd dichotomy is problematic yet inherent in the class definitions corresponding to each claim: *i.e.*, "all persons who purchased or leased a 2011-2013 Hyundai Elantra in Virginia." (Complaint ¶¶ 20, 29, 34). The fact that so many would-be class members (and all but one of the original named representatives) are already covered by the nationwide class settlement in the MDL further undermines the viability of the class. There is little reason to think that Mr. Gentry's post-November 2nd claims are typical of pre-November 2nd buyers, or even typical of other *post*-November 2nd purchasers: As HMA observes, the reasons to purchase a particular vehicle vary greatly from one person to another, and performance issues at the heart of this case, like gas mileage, will depend on many idiosyncratic factors such as geography, driving habits, and highway versus city driving.

In sum, these concerns cut to the commonality of the class, as well as Mr. Gentry's typicality. There are also adequacy issues, since all claims (except a portion of Mr. Gentry's Lemon Law count) fail on the merits. Accordingly, the Court will dismiss the class allegations with prejudice as to the Lemon Law claim based on fuel economy, the VCPA claim, and the false advertising claim. The class allegations are dismissed without prejudice as to Mr. Gentry's Lemon Law claim based on the on-board mileage calculator, which survives on the merits.

### ALLEGATIONS IN *ABDURAHMAN* AND *ABDUL-MUMIT*

These cases involve claims by hundreds of plaintiffs against HMA and dozens of its dealerships in Virginia. Because the facts and legal theories in both cases are substantially the

– 17 –

same (indeed, the allegations are virtually identical to *Gentry*), record citations are to the *Abdul-Mumit* Complaint unless otherwise noted. The cases assert the same three claims under Virginia law as in *Gentry*: Lemon Law; VCPA, and; deceptive advertising. (Dkt. 1-3 [hereinafter "Complaint"] ¶ 2). As in *Gentry*, the plaintiffs are alleged purchasers of 2011–2013 Hyundai Elantras.

In November 2010, HMA's CEO introduced the "All New 40 MPG Hyundai Elantra." (Complaint ¶ 5). Ad campaigns represented that the Elantra would obtain 40 miles per gallon ("MPG") on the highway. (*Id.*). HMA also represented through owners' manuals that the Elantra's on-board mileage calculator was accurate, but it allegedly does not accurately calculate or display the correct MPG obtained. (*Id.* ¶ 6). Plaintiffs allege "on information and belief" that HMA never performed standard industry tests to assess Elantra's MPG. (*Id.*).[4]

Plaintiffs allege that HMA published on its website in April 2012 statements that 39% of Elantras obtain 40 MPG. (Complaint ¶ 8). According to the complaints, HMA cannot fix its 2011–2013 Elantras to make them produce 40 MPG. (*Id.* ¶ 11).

Plaintiffs assert that several statements or actions by Defendants constituted violations of the VCPA: (A) Defendants' statements that Elantras would receive 40 MPG; (B) Defendants' refusal to sell an Elantra to Plaintiffs that conformed to the 40 MPG representation; (C) Defendants' representations that the on-board calculator was accurate; (D) statements from an HMA website that 2013 Elantras could obtain 38 MPG had deceptively obscure and difficult-to-read disclaimers. (*See* Complaint ¶ 16). The Complaints alleged that "plaintiffs specifically relied upon [HMA's and the dealerships] advertisements as truthful and accurate." (*Id.* ¶ 17). It is alleged that HMA "programmed and installed the on-board calculator to show that the vehicle

---

[4] This allegation contradicts the related one in *Gentry*, where Plaintiff's counsel wrote that HMA had conducted the tests but made false representations about the on-board calculator.

– 18 –

is getting higher mileage than actually obtained."  (*Id.*).

## JURISDICTIONAL ISSUES

Earlier in this litigation, the Court ordered the parties to brief the question of subject matter jurisdiction (dkt. 61), specifically as it relates to the Class Action Fairness Act ("CAFA"), which provides for jurisdiction over mass actions under certain circumstances:  *i.e.*, typically when there is minimal diversity of citizenship between the parties, an aggregate amount-in-controversy over $5,000,000, and there are 100 or more plaintiffs.  *See* 28 U.S.C. §§ 1332(d)(2), (d)(10)–(11)(B).  Under § 1332(d)(11)(B)(i), jurisdiction exists over these mass actions "except that jurisdiction shall exist only over those plaintiffs whose claims in a mass action satisfy the [$75,000] jurisdictional amount" in controversy requirement.  The parties have briefed the import of the "except clause" and Plaintiffs have filed a motion to remand.

## I.    The Except Clause Is a Jurisdictional Carveout, not a Threshold for Removal

The except clause could be interpreted either as a threshold to removal (*i.e.*, every plaintiff must meet the amount-in-controversy requirement *before* a case can be removed), or as a subsequent jurisdictional limit (*i.e.*, any plaintiff whose claims fell below $75,000.01 must be severed and remanded *after* removal).  The weight of authority indicates that the second interpretation is the better one.  *See  Robertson v. Exxon Mobil Corp.*, 814 F.3d 236, 240 n.2 (5th Cir. 2015); *Lowery v. Alabama Power Co.*, 483 F.3d 1184, 1203–07 (11th Cir. 2007); *Anwar v. Fairfield Greenwich Ltd.*, 676 F. Supp. 2d 285, 292 (S.D.N.Y. 2009); *Haley v. AMS Servicing, LLC*, No. CIV. 13-5645 FSH JBC, 2014 WL 2602044, at *4 (D.N.J. June 11, 2014); *see also Mississippi ex rel. Hood v. AU Optronics Corp.*, 134 S. Ct. 736, 740 (2014).  As Defendants put it, "the 'except' clause permits individual plaintiffs to contest jurisdiction and seek to have their individual cases remanded . . . ."  (*Abdurahman*, dkt. 113 at 1).  Thus, the Court has CAFA

– 19 –

jurisdiction generally over the removed cases as long as at least one plaintiff meets the individual amount-in-controversy requirement; but if challenged, a particular plaintiff must also meet the individual amount-in-controversy requirement to remain in federal court.

## II.     Plaintiffs Satisfy the Individual Amount-in-Controversy Requirement.

Both *Abdurahman* and *Abdul-Mumit* involve at least one plaintiff that satisfies the individual amount-in-controversy requirement, thus making removal of the cases proper as a general matter. In *Abdurahman*, Jeffrey Barber and Rufus Tunstall purchased two Elantras each, for a total value of $46,304 for each plaintiff. (*Abdurahman*, dkt. 1 (Notice of Removal) ¶ 12). Plaintiffs request damages in the form of the full purchase price of their vehicle, plus treble damages (*Abdurahman*, dkt. 1-2 at ECF 8–29 ¶¶ 8, 13, 17–18, 20, Prayer for Relief), which are allowed by statute. *See* Va. Code § 59.1-204(A). Consequently, treble damages may be included in the amount-in-controversy calculation. *See Dell Webb Communities, Inc. v. Carlson*, 817 F.3d 867, 871 (4th Cir. 2016); *Wall v. Fruehauf Trailer Servs., Inc.*, 123 F. App'x 572, 577 (4th Cir. 2005). This takes the value of Barber and Tunstall's respective claims well over $75,000.

As for the remaining plaintiffs in *Abdurahman* and those in *Abdul-Mumit*, all were alleged to purchase defective Elantras roughly valued at $23,000. (*E.g.*, *Abdul-Mumit*, dkt. 1 (Notice of Removal) ¶ 15; dkt. 1-3 (Complaint) ¶ 3). Statutory trebling takes this value to $69,000 for each plaintiff. Plaintiffs also requested attorneys' fees (at $350/hour), expert witness fees, and costs. (*Abdul-Mumit*, dkt. 1-3 ¶¶ 8, 13, 17–18, 20, Prayer for Relief; *Abdurahman*, dkt. 1-2 ¶¶ 8, 13, 17–18, 20, Prayer for Relief). These kinds of damages may be included in the amount-in-controversy calculation if they are permitted by statute, which they are here. *See Missouri State Life Ins. Co. v. Jones*, 290 U.S. 199, 202–03 (1933); *Dell Webb Communities, Inc.*

– 20 –

*v. Carlson*, 817 F.3d 867, 871 (4th Cir. 2016); *Francis v. Allstate Ins. Co.*, 709 F.3d 362, 368 (4th Cir. 2013); *CPFilms, Inc. v. Best Window Tinting, Inc.*, 466 F. Supp. 2d 711, 713 (W.D. Va. 2006) (compiling cases); Va. Code § 59.1-207.14. The "complexity of the[se] case[s] is sufficient to establish" that, when accounting for these additional categories of recoverable damages, the amount in controversy for each plaintiff exceeds $75,000.00. *See Francis v. Allstate Ins. Co.*, 709 F.3d 362, 369 (4th Cir. 2013).[5]

## III. CAFA's Local Controversy and Home State Exceptions Do Not Apply

CAFA contains provisions whereby the Court is required to decline jurisdiction over cases with certain features of a local dispute. *See* 28 U.S.C. § 1332(d)(4). These carve-outs are known as the "local controversy," *id.* § 1332(d)(4)(A), and "home state" exceptions. *Id.* § 1332(d)(4)(B). Plaintiffs contend in their motion to remand that these provisions warrant remand, but they are not applicable here.[6]

To qualify for remand under the "local controversy exception," there must have been "no other class action . . . filed [in the three years before removal of the instant case] asserting the *same or similar* factual allegations against *any* of the defendants on behalf of the *same or other*

---

[5]     Even if CAFA jurisdiction were lacking, Defendants argue that traditional diversity and supplemental jurisdiction over each plaintiff exists because the dealership defendants were fraudulently joined. Once their Virginia citizenship is disregarded, so the argument goes, complete diversity exists. The Court does not decide this issue because it finds CAFA jurisdiction exists, but fraudulent joinder is discussed *supra* as to other aspects of CAFA.

[6]     Many Circuits hold that these exceptions are not purely jurisdictional and thus a motion to remand must be made in a reasonable time. *See, e.g.*, *Watson v. City of Allen, Tx.*, 821 F.3d 634, 639–40 (5th Cir. 2016); *Visendi v. Bank of Am., N.A.*, 733 F.3d 863, 869–70 & n.3 (9th Cir. 2013) (compiling cases); *Gold v. N.Y. Life Ins. Co.*, 730 F.3d 137, 142–43 (2d Cir. 2013); *Dutcher v. Matheson*, No. 14-4085, 2016 WL 6471724, at *4 (10th Cir. Nov. 2, 2016); *Mason v. Lockwood, Andrews & Newnam, P.C.*, No. 16-2313, 2016 WL 6777325, at *7 (6th Cir. Nov. 16, 2016). To the extent these cases reflect the law in this Circuit, the motions to remand are untimely. Plaintiffs waited over a year after the cases were returned to this Court by the MDL before moving to remand them to state court. (*Abdul-Mumit*, dkts 46, 73).

– 21 –

persons." 28 U.S.C. § 1332(d)(4)(A)(ii) (emphasis added).  As shown both above and below, the factual allegations in *Gentry*, *Abdurahman*, and *Abdul-Mumit* are overwhelmingly similar.  In many instances they are exactly the same; they appear to have been copied directly from *Gentry* into *Abdurahman* and *Abdul-Mumit* only days after the Court transferred *Gentry* to the MDL. All three cases present identical claims necessitating proof of similar facts, and the complaints are lodged against HMA (*i.e.*, the central defendant in each case, and the only defendant against whom there are substantive allegations). As a result, the local controversy exception does not apply and the Court retains jurisdiction. *See Dutcher v. Matheson*, 840 F.3d 1183, 1191 (10th Cir. 2016) (finding local controversy exception to jurisdiction inapplicable where "complaint not only raises similar factual allegations, but also asserts the same basis of wrongdoing"; "We are struck by the similarity of the factual allegations between the two complaints, which allege, in nearly identical language, the same acts of wrongdoing by the same defendant.").[7]

As an alternative basis for remand, Plaintiffs cite the home state exception in subsection (B), which requires declining jurisdiction when, *inter alia*, "the primary defendants" are citizens of Virginia.  28 U.S.C. § 1332(d)(4)(B).  Again, this subsection fails.  First, HMA—as the overwhelming focus of the complaints, manufacturer of the allegedly defective cars, and holder of the greatest potential liability to the greatest number of plaintiffs—is the primary defendant,

---

[7]    To apply, subsection (A) also requires that at least one defendant "*whose alleged conduct forms a significant* basis for the claims" be a citizen of Virginia.   28 U.S.C. § 1332(d)(4)(A)(i)(II)(bb), (cc) (emphasis added).   This provision also is not satisfied.   As discussed elsewhere, *Abdurahman* and *Abdul-Mumit* contain no substantive allegations against the dealership defendants, which are the purported Virginia citizens.   Furthermore, Defendants argue (*Abdurahman*, dkt. 68 ¶¶ 6–19; *Abdul-Mumit*, dkt. 1 ¶¶ 26–38), the procedural history of this case suggests, and writings from Plaintiffs' counsel show (*Abdurahman*, dkt. 68-1; *Abdul-Mumit*, dkt. 1-5) that the subsequent mass actions filed in state court named the in-state dealership defendants to evade the stay in *Gentry*, prevent removal, and avoid potential transfer of the suits to the MDL.   Fraudulent joinder would therefore apply to disregard the dealership's citizenship.   *See Weidman v. Exxon Mobil Corp.*, 776 F.3d 214, 218–19 (4th Cir. 2015).

– 22 –

not the in-state dealership defendants (against whom there are no specific factual allegations). *See Watson v. City of Allen, Tx.*, 821 F.3d 634, 641 (5th Cir. 2016) ("The phrase 'primary defendants' indicates a chief defendant or chief class of defendants"); *Vodenichar v. Halcon Energy Properties, Inc.*, 733 F.3d 497, 505–06 (3d Cir. 2013) (setting forth factors in "primary defendant" analysis). Second, the absence of any factual allegations relating to the dealership defendants is so conspicuous in these cases that fraudulent joinder applies, and thus their citizenship can be disregarded. *See Weidman v. Exxon Mobil Corp.*, 776 F.3d 214, 218–19 (4th Cir. 2015) (holding that when "there is no factual detail at all to support any claims against" non-diverse defendants, and plaintiff "has not in any way alleged" their involvement or that "their actions were connected" to plaintiff, then fraudulent joinder applies).[8]

## IV.    Removal Was Procedurally Proper.

Briefly in their written submissions (dkt. 72 at 8 ¶11; dkt. 74 at ECF 3) and at oral argument (Tr. at 3–5, 15–16), Plaintiffs suggested that Defendants improperly removed the case because they should have first conducted discovery in state court to ascertain the amount-in-controversy. This is not the law.

"When the plaintiff's complaint does not state the amount in controversy, the defendant's notice of removal may do so." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 135 S. Ct. 547, 551 (2014) (citing 28 U.S.C. § 1446(c)(2)(A)); *see Strawn v. AT & T Mobility LLC*, 530 F.3d 293, 298 (4th Cir. 2008); *Ellenburg v. Spartan Motors Chassis, Inc.*, 519 F.3d 192, 200 (4th Cir. 2008). Although the Complaints seek particular categories of damages—*e.g.*, purchase price of Plaintiffs' vehicles, treble damages, attorneys' fees—they do not request a sum certain. (*See*

---

[8]    For similar reasons, the Court will not decline to exercise jurisdiction based on 28 U.S.C. §1332(d)(3): the primary defendants are not citizens of Virginia, the actions were brought originally in state court to avoid federal jurisdiction, and same or similar claims were asserted in a class action within a preceding 3-year period. *See id*. § 1332(d)(3)(C), (E)-(F).

– 23 –

*generally Abdurahman*, dkt.1-2 at ECF 8–29; *Abdul-Mumit*, dkt. 1-3). Accordingly, Defendants put forth allegations in their notices of removal (dovetailed with supporting affidavits[9] and the allegations in the Complaints) that satisfy the requisite amount in controversy, as the Court has discussed above. *See supra* Parts I–II. The requirements of § 1446 have therefore been satisfied.[10]

### *ABDURAHMAN* AND *ABDUL-MUMIT*—ANALYSIS OF MOTIONS TO DISMISS

## I.    Failure to Properly Plead Claims

HMA (and the dealerships) first point out that, as mass actions where individual plaintiffs proceed against individual defendants, the Complaints do not satisfy the pleading standards of *Twombly* and *Iqbal*. They observe that the complaints fail "to identify the factual basis for claims by **any** plaintiff" or identify the plaintiffs themselves in the body of the pleading. (Dkt. 104-1 at 2 (emphasis in original)). Rather, the individual plaintiffs are simply named in the caption and not mentioned again by name in the complaint; the only general factual allegation about them is: "plaintiffs are individual buyers" of 2011–2013 Elantras in Virginia. (*Abdul-Mumit*, Complaint ¶ 3).

This problem also exists as to the dealership defendants. As Defendants observe, "there is not a single substantive allegation anywhere in either Complaint about any dealer." (Dkt. 104-

---

[9]    The evidentiary submissions, though prudent, were not even required from Defendants unless and until the Court or Plaintiffs questioned the amount-in-controversy allegations from the notices of removal. *See Dart Cherokee*, 135 S. Ct. at 551, 553–54.

[10]    Plaintiffs rely on 28 U.S.C. §§ 1446(b)(3) and (c)(3)(A). According to them, those subsections do not permit removal until after Defendants received in state court a filing establishing the grounds removal, which—in their view—must be accomplished exclusively through discovery in state court. (*See* Tr. at 4–5, 16). Even if Plaintiffs' substantive understanding of this rule was correct (a point the Court doubts), those statutes only apply when "the case stated by the initial pleading is not removable," which was not the situation here. *See Dart Cherokee*, 135 S. Ct. at 551.

– 24 –

1 at 3).  The complaints instead lump the dealers in with generic statements made about HMA. As this Court has observed before, "[i]n the Fourth Circuit and elsewhere, courts have interpreted *Twombly* and *Iqbal* to mean that generic or general allegations about the conduct of 'defendants,' without more, fail to state a claim."  *See Marcantonio v. Dudzinski*, 155 F. Supp. 3d 619, 626–27 (W.D. Va. 2015) (compiling cases).

Plaintiffs' response on this score states that these lawsuits were filed pursuant to Virginia's class action/consolidation/coordination statute, Va. Code § 8.01-267.1, for "efficiency," and "it would abate the savings the statute was intended to provide if each and every particular fact unique to each Plaintiff is required."  (*Abdurahman*, dkt. 105 at ECF 11). While "each and every" unique fact is not required, federal pleading standards nevertheless control in federal court, *see generally Erie R. Co. v. Tompkins*, 304 U.S. 64 (1938), and the Complaints here fail those standards.  (*See Abdurahman*, dkt. 107 at 6).

## II.     Standing

Defendants argue that Plaintiffs lack standing, which is a jurisdictional issue that must be decided.  They observe that the Complaints allege that "**someone** sustained an injury, but that will not suffice" because they must allege that they sustained a redressable injury at the hands of HMA.  (*Abdurahman*, dkt. 104-1 at 5) (emphasis in original).  While the Complaints are deficient, the shortcoming goes to the merits rather than to standing.  It is alleged that Plaintiffs purchased the model of car that otherwise is at the heart of this litigation; it is not, for instance, as if they bought a Ford (or no car at all) and thus fell completely outside the bounds of this case. Rather, the failing here is that there are insufficient facts alleged to show that Plaintiffs have stated a claim based on their purchases.  Thus, the better understanding of the circumstances here is that Plaintiffs failed to satisfy the pleading standards of Rule 8, not that they lack

– 25 –

constitutional standing.

### III. Incorporation of *Gentry* Arguments on Preemption and Primary Jurisdiction

Defendants incorporate by reference their aforementioned arguments in *Gentry* about preemption and primary jurisdiction. The Court incorporates its rulings on those issues in *Gentry* here to the extent they provide an alternative basis for dismissal.

### IV. Lemon Law Claim

Aside from insufficient pleading, there are additional legal bases to dismiss the Lemon Law claims in *Aburahman* and *Abdul-Mumit*.

#### A. Failure to Provide Notice or Make Attempts to Remedy

Virginia's Lemon Law requires that "the consumer . . . prior to availing himself of the provisions of" that law, "notify the manufacturer of the need for the correction or repair of the nonconformity." Va. Code § 59.1-207.13(E). Notification under the statute requires that (1) "a written complaint of the defect or defects has been mailed to it or (2) it has responded to the consumer in writing regarding a complaint, or (3) a factory representative has either inspected the vehicle or met with the consumer or an authorized dealer regarding the nonconformity." Va. Code § 59.1-207.11.

Here, the Complaints contain no allegations particular to any plaintiff, much less that any of them notified HMA or the dealerships. It "is clear that in order to avail herself of the extraordinary relief provided in the Lemon Law, [a plaintiff is] required to report the defects and the need for correction by notification to the manufacturer of the nonconformity." *Smith v. Gen. Motors Corp.*, 1994 WL 1031403, at *4, 35 Va. Cir. 112 (Va. Cir. Ct. 1994).

Faced with this shortcoming, Plaintiffs respond that Subsection (D) obliges the manufacturer to disclosure that written notice of nonconformity is required, but that Defendants

– 26 –

failed to so prove.  The fact that Defendants did not "alleg[e] and establish[]" (*Abdul-Mumit*, dkt. 60 at ECF 6) that they complied with Subsection (D) is immaterial, because at the pleading stage an evidentiary showing *by Defendants* is not required.  More centrally, Subsection (D) requires the manufacturer to inform customers only that "written notification of the nonconformity to the manufacturer is required before the consumer may be eligible *for a refund or replacement of the vehicle* under this chapter."  Va. Code § 59.1-207.13(D) (emphasis added).  In other words, Subsection (D) (or failure to abide by it) does not relieve a consumer of his exhaustion/notification prerequisite in Subsection (E).  Moreover, Plaintiffs' conclusory argument that notice would have been in vain fails:  No law is cited for the proposition that a bare, self-serving allegation in a complaint can overcome a statutory requirement.  The Lemon Law claim should thus be dismissed.

Likewise, a would-be plaintiff must make "a reasonable number of attempts" to have a manufacturer remedy the nonconformity.  Va. Code § 59.1-207.13(A).  The Complaints do not include any allegations about whether any plaintiff made reasonable attempts as defined in and required by the statute.  *Id*. § 59.1-207.13(B).

### B. Dealerships as Improper Defendants

Under § 59.1-207.13(A), only the "manufacturer shall" be liable for nonconformities, not the dealerships.  *See Maggard v. A&L RV Sales*, No. 2:08CV00013, 2008 WL 2677873, at *1 (W.D. Va. July 3, 2008) (Jones, J.); Va. Code § 59.1-207.11.  In response, plaintiffs agree that "Lemon Law claims are not pled against the dealerships."  (Dkt. 105 at ECF 9).

### V. VCPA Claim:  Failure to Satisfy Rule 9(b) and Lack of Reliance

Again, Defendants correctly argue that the VCPA claims are subject to Rule 9(b)'s heightened pleading standard for fraud.  The failure here is even more apparent than in *Gentry*

– 27 –

because these Complaints involve hundreds of purchasers and do not explain any details surrounding any of their purchasers (*e.g.*, where and when they bought the vehicles, who made certain representations to them, what those representations were, *etc.*). Plaintiffs' response brief contains merely bald assertions of particularity that are in turn built upon the conclusory allegations in the Complaints. (Dkt. 105 at 10). The Complaints also fail to include meaningful, non-conclusory allegations of reliance, a necessary element for a VCPA claim. *See supra* analysis in *Gentry*.

## VI.    Other Arguments

Defendants also make other arguments about EPA mileage estimates, the false advertising claim, and the duplicativeness of *Abdurahman* and *Abdul-Mumit*. In light of the Court's other rulings and decision to dismiss those Complaints in their entirety, the arguments are not addressed.

## NATURE OF DISMISSAL

Finally, the Court must decide whether to dismiss the faulty claims in *Gentry* and the cases in *Abdurahman* and *Abdul-Mumit* with or without prejudice. After considering the circumstances of the cases and the applicable law, the Court will order dismissals with prejudice, except as to the class allegations regarding Mr. Gentry's Lemon Law claim based on the on-board mileage calculator, which are dismissed without prejudice.

The Court previously suggested that the Complaints in these cases should be amended, yet it has been accommodating in allowing the respective Plaintiffs to decide the matter for themselves. For instance, in a June 21, 2016 case management order entered in all three cases, the Court observed:

> Given the proceedings in the MDL, the voluminous nature of the complaints, their possible duplication, and the fact that Defendants never had their motions to

– 28 –

dismiss adjudicated on the merits, the Court is attuned to the possibility that the complaints now may be stale and in need of updating.

(*Gentry*, dkt. 86 at 2). Nevertheless, because "a plaintiff is the master of his complaint," the Court gave Plaintiffs the option of filing amended complaints within 21 days or allowing their prior filings to remain operative. (*Id*. at 2–3).

This deadline passed without amendment, signalling that Plaintiffs wished to proceed with their original filings. But Plaintiffs subsequently filed a letter motion seeking a *nunc pro tunc* extension, writing that "more time, and more conferences among counsel, are necessary to determine what amendments, if any, are necessary." (*Abdurahman*, dkt. 87 at 2). The Court granted what amounted to a 20-day extension of the original deadline, but it also indicated that the three cases had "lingered" for "too long" since remand from the MDL and that further extensions of the deadline were unlikely. (Dkt. 89 at 2–3). For a second time, the deadline expired without amended complaints, thus making the previous filings operative.

From this, the Court concludes that Plaintiffs have nothing more to add to their Complaints. Well over two years of litigation transpired between the time the Complaints were filed and the Court's invitations to amend, but Plaintiffs—as was their right—twice declined to do so, even though the evolved circumstances of the cases might have warranted it. Moreover, many of the reasons for dismissal rest on purely legal grounds. *See Cozzarelli v. Inspire Pharm. Inc.*, 549 F.3d 618, 630 (4th Cir. 2008). And at no time during adjudication of the motions to dismiss did Plaintiffs suggest that they might seek leave to amend or had other facts to put before the Court. *See id*. To the contrary, they remained steadfast that the Complaints "state causes of action and adequately put Hyundai on notice of the claims against it and there is absolutely no surprise." (*Aburdahman*, dkt. 105 at ECF 13–14; *Gentry*, dkt. 92 at ECF 17). Defendants, on the other hand, specifically requested dismissal with prejudice in their moving briefs. (*Abdurahman*,

– 29 –

dkt. 104-1 at 15; *Gentry*, dkt. 91-1 at at 21–22).

"The determination whether to dismiss with or without prejudice under Rule 12(b)(6) is within the discretion of the district court." *Weigel v. Maryland*, 950 F. Supp. 2d 811, 825 (D. Md. 2013) (citing, *inter alia*, *Carter v. Norfolk Cmty. Hosp. Ass'n, Inc.*, 761 F.2d 970, 974 (4th Cir. 1985)). Where there has been no opportunity to amend the complaint, dismissal should generally be without prejudice. *See Cosner v. Dodt*, 526 F. App'x 252, 253 (4th Cir. 2013); *Adams v. Sw. Virginia Reg'l Jail Auth.*, 524 F. App'x 899, 900 (4th Cir. 2013). Because Plaintiffs have been offered (but forgone) opportunities to amend and have not suggested the existence of additional facts, and because the dismissals rest in large part on legal deficiencies, they will be with prejudice.

## SUMMARY

For the foregoing reasons, the motions to remand *Abdurahman* and *Abdul-Mumit* will be denied, and the motions to dismiss those cases will be granted. The motion to dismiss in *Gentry* will be granted in part and denied in part. All claims in *Gentry* will be dismissed except for Mr. Gentry's Lemon Law claim based on the on-board mileage calculator.

The Clerk is requested to send a copy of this opinion to counsel. An appropriate order will issue.

Entered this ____23rd____ day of January, 2017.

NORMAN K. MOON
UNITED STATES DISTRICT JUDGE

– 30 –